Our first case today is Lopez-Cruz v. Attorney General No. 18-1614. Good morning, Your Honors. Good morning. May it please the Court, my name is Alex Gregory Isbell. I am attorney of record for Ms. Lopez-Cruz. At the outset of our arguments this morning, I'd like to request five minutes of rebuttal time. That will be granted. Your Honors, we're here this morning for four primary reasons concerning the Board of Immigration Appeals' reversal of an immigration judge's decision granting Ms. Damaris Lopez asylum in the United States. We believe that the BIA misapplied the clear error standard of review. We believe that the Board impermissibly engaged in de novo fact-finding. And assuming that we should reach the next issue without remand for the issue of clear error, we believe that the immigration judge did find an appropriate nexus between the harm that Ms. Damaris, Ms. Lopez-Cruz fears in Honduras. Can I ask about your assertion about fact-finding? In looking at the BIA's decision, it says, and granted it's pretty darn brief, and it's got the sign of sloppiness in saying she's to be removed till Salvador. An embarrassment, I'm sure, to the BIA that that mistake got in there. But the statement that the BIA makes, and I'm quoting, is, the fact that the respondent was the victim of her assailant's criminal conduct does not necessarily establish a nexus between the harm and a protected ground in the absence of evidence that the respondent would not have been treated in the same manner had she not held the status of head of household. We discern clear error, et cetera, clear error in the finding of nexus. That statement appears to be just a pure statement of law, a statement that logically, even if you accept everything that the immigration judge said, it doesn't link up and prove a nexus. Now, how is the BIA, if I'm mistaken about that, explain how saying I don't see the logical link, BIA says, I don't see a logical link, how is that fact-finding? Your Honor, we believe it's fact-finding because there's an interrelationship in the Board's decision and in the Board's error between its, I suppose the best way to look at it is our position is that the Board has essentially skipped a step in its reasoning. It arrives at the conclusion of clear error with no analysis or explanation of how it came to that conclusion. There's a one sentence. It's giving you, it's in that sentence is the premises as well as the conclusion. Why isn't it, what is missing? What's the step that's missing? If it says, in effect, okay, we take everything the immigration judge says is true, but even if all that's true, it doesn't prove there's a nexus between the particular social group of young female head of household and the alleged fear of persecution because the activities and actions of the purported persecutors would be the same whether she was the head of household or not. It has to do with her being a young female. It has nothing to do with her being a head of household. That all seems to me in that sentence. Where's the logical flaw in that? The logical flaw, Your Honor, is that there is record evidence showing that there is a connection between the persecutors' motives and Ms. Lopez Cruz's status as head of household. She testified to the fact that she was directly afraid of her persecutors because she was without male protection. She testified to that fact in writing in her declaration. There is record evidence from the State Department. Doesn't that conflate circumstance and cause? It is true that the lack of a male protector figure in that home facilitated the bad action of the male neighbors. But that doesn't make the lack of a male in the home the cause of the bad action. That's what has to be, right? The nexus has to show there's some cause, causal relationship. Yes, and the causal relationship, Your Honor, is that if these were truly criminal actions, as a matter of logic, why would the criminals continually unsuccessfully target the same victim if they didn't have a reason beyond a criminal motive? Leave the criminal piece out of it. Just take this as straight up, whether it's criminal behavior under Honduran law or our law or not, just that the behavior is what it is. Posit this. If she'd had an older sister who was the head of the household, is there any demonstration that she would have been free of the sexual harassment and intimidation? No, Your Honor, there is not. Then isn't that the point that the BIA is making? It doesn't have anything to do with her being a head of household. It has to do with her being a young female. No, Your Honor. We believe that the record in this case demonstrates that the cause, the root cause of the threatened sexual violence and physical violence has to do with the fact that there is no protector in the house, that the assailants knew this and targeted Ms. López-Cruz because of that. I'm just saying, assume they found it, yeah, there's nobody there to save her, let's go get her. That doesn't have to do with head of household. That has to do with no male in the house. If there were another female who were the head of household, there's no indication she wouldn't just as much have been the target. That's what I take the BIA to be saying, and maybe we're not communicating, but what is it about being head of household? I don't think anybody next door, there's no indication in the record that anybody next door said, she's the head of household, that makes her extra attractive, I'm going to harass her more. You keep pointing to the fact that there's no male, but there could have been another female head of household, and she still would just as much have been a target of these guys' unwanted and egregiously bad advances. But I think that the Board, Your Honor, has de facto recognized that head of household is relevant in this case, because without that factor included in the particular social group, it would likely fail under a matter of MEG, because the... Right. The fact that you can't get there, you, your client, get there by just saying young female doesn't mean that by narrowing the group with head of household, there's a nexus. It's true it makes it, for sake of argument, it makes it a particular social group. But having made it a particular social group does not, in and of itself, then create the nexus. You've got to make the nexus connection. And how do you make that nexus connection? What is the legal standard for making that nexus? Is it but-for? Your Honor, pursuant to the Court's directives, we don't believe that a but-for standard applies under the Immigration and Nationality Act. This Court's own precedent under Indah Shimieh goes through an analysis of how the REAL ID Act changed the standard for causation in mixed motive cases from at least in part to one central motive. The Court performed Chevron analysis on the changes to the REAL ID Act and articulated that there is not a hierarchy of motives. So nexus is established if there is more than tangential evidence in the record that demonstrates that persecutors were motivated by a protected ground. So is it your position that the BIA in this case erroneously applied a legal standard, applied but-for causation as opposed to some other standard? That's correct, Your Honor. I don't think that there is a direct statement that a but-for standard of causation applies, but I think the implication that one applies is legally erroneous. I think that this Court's own precedent settled that fact in Indah Shimieh. What does Gonzales-Posadas have to do with this case, if anything? Gonzales-Posadas is related. I think that there are some important distinctions between our case and Gonzales-Posadas. Most of them— Did Gonzales-Posadas apply, in effect, a but-for standard, though? Sorry, Your Honor? Did it apply a but-for standard? I don't believe it did, no. I think that that case was ultimately decided on the basis of the fact that there were changing narratives in the petitioner's claim saying before the asylum office that he was not homosexual, later changing his claim to say that he was. I don't believe that our case contains such similar changes in narrative. When you come back, if you could just lay out specifically, because you can see there's a concern about the particular social group. You just mentioned the report and her testimony. If you want to think about it, it would be nice if you could lay out specifically what in the record supports your contention about the particular social group is young female heads of household, okay? Thank you, Your Honor. Thank you. Good morning, Your Honors, and may it please the Court. Benjamin Zaylin on behalf of the Attorney General. Before I get to the Court's question in its order that it issued, which I'm happy to discuss immediately, but I just wanted to first raise the government doesn't make any – doesn't raise that this is a case that needs to be dismissed based on the Board's subsequent issuance of its order to correct the country of removal. We filed a motion to supplement, which the Court hasn't ruled on yet, but I just want to advise the Court that we don't take any position that, because the petitioner hasn't filed a subsequent petition for review, that this case needs to be dismissed. The second issue, and I think that goes to what the Court's been discussing, is whether the Board engaged in impermissible fact-finding. And under case law, the BIA's interpretation, motive is a factual finding, whether or not the persecutors possessed the motive. And the only – the Board didn't overturn or find clear error in all the findings of the immigration judge. It just went to that specific finding. Did the persecutors harm petitioner on account of a protected ground? Namely, did they target her because she was a young female head of household? And you agree that the REAL ID Act allows for mixed motives presentation by the petitioner? I do, Your Honor, but I'd like to just step back. The first thing is I'd like – I think this case can be resolved without a mixed motive analysis, because under the basic motive standard, which petitioner has the burden to show, they must prove that they were persecuted by the individuals on account of a protected ground, just under that basic standard. And in this case, we – there's no evidence that those individuals that persecuted her did so because she was a young female head of household. So that's the initial sort of piece that – We have her testimony. We do have her testimony, but we don't have anything in the record, and this is what the Board was getting at. There's nothing in the record that demonstrates that those who harmed her did so because of her protected ground. There's nothing in her testimony that specifically discusses what those individuals said to her. There's nothing that shows their motive. And the Board kind of intimated at this that it appeared to be more sort of a criminal nature and an unwanted sexual attack. And while this is something that's sympathetic, not every sympathetic criminal activity becomes an asylum claim or a grant of asylum, and that's where the Board has to draw lines. Is your statement that the Board intimated that – does that hint at the difficulty in this case, that the Board gave what is in essence a two-sentence response to a lengthy and thoughtfully reasoned opinion from the immigration judge? Sure. I mean, I think with almost a number of cases that we see sometimes from the Board, we wish the decisions were longer or more thorough. But they deal with a very high caseload, and this is sometimes the decisions we deal with. And as this Court and others have said, the Board's not required to write an exegesis. They're just required to sort of lay out their decision-making. Yeah, I don't know. I mean, there's a difference in the exegesis, and these two sentences were sending her to the wrong place. But, you know, it wasn't her finest hour, I don't think. Yeah, and I understand. And I think in the case where you overturn the immigration judge, this Court sometimes will take more scrutiny towards looking at the decisions issued by the Board. But I think on its face, and as Judge Jordan mentioned, on its face, the particular social group of young female head of household without male protection or a male protector in the family kind of fails on its face because if there are multiple women or multiple females in the household, how do you differentiate who will be targeted? And so the Board, in looking at the case and looking at the findings of fact by the immigration judge, found clear errors simply in that finding. But doesn't that statement, in the absence of evidence that the respondent would not have been treated in the same manner had she not held the status of head of household, doesn't that statement indicate they were applying a but-for causation standard, that the legal standard was but-for? Forget about findings of fact. So, and the government has no objection to the Court's application of a but-for standard, and the Board of Immigration Appeals, in its most recent matter of LEA decision, has applied a but-for standard. When you say you have no objection, we're trying to find out what the government's position is. Is it supposed to be a but-for? And that is the government's position, as articulated by the Board in the matter of LEA, that the first step is the but-for test. Is that the appropriate test in a mixed motives analysis? Well, so stemming from the REAL ID change to the one central reason standard, the Board first looked at the interpreted one central reason to state that the persecution and the motive had to be more than minor. And this Court affirmed that in de Chimier, although it removed the word subordinate from the Board's interpretation. Subsequently, in following some decisions in the Ninth, the Board took this matter up again in the matter of LEA. And in the matter of LEA, the Board started to apply the but-for causation standard, and this Court's more-than-minor standard. So there's two pieces. There's the but-for causation. So petitioner must show that those who harmed her did so because of the protected ground. And that reason, if there's mixed motives, has to be more than minor. So sometimes there can be multiple motives. And if there are multiple motives, then the Board would have to or the immigration judge would have to weigh those motives. Now, in other contexts, the Supreme Court has indicated that if mixed motives is an appropriate basis for bringing a certain kind of claim, say a discrimination claim, that but-for is not the test. In Gross versus – I'm sorry, in the Gross versus FDL Financial Services case, the Supreme Court made clear that age discrimination, mixed motives is not appropriate, so the appropriate standard for causation is but-for, which suggests that when it's mixed motives, but-for is not the test. So with respect to that case, that case interpreted when a statute uses the language because of? Correct. Then, like the statute does, then a but-for analysis does apply. And I know with respect to mixed motive, you're saying that it would be different. But the only thing we have here is the statute here, which says because of, and applying Gross, the government's position is that then we would go to but-for. But it also says one central reason. For the one central – right. But because of the one central reason. And so taking that because of, and that would then apply to the but-for for the one central reason. So that would be the government's position on that. Can you address whether Gonzales-Posadas applied a but-for standard and whether that would affect what we're doing here? So the position is that Gonzales-Posadas didn't use the word but-for, but applied it pretty close to a but-for causation standard. And it said the protected characteristic citing indecinity must be an essential or principal reason for the persecution. And that's obviously in the withholding context. That doesn't matter, though, does it, that it was withholding versus asylum? Well, in that case, this court said the one central reason extends to asylum. So the law would essentially be the same for the application of one central reason. We said the one central reason had to be essential. Does that imply a but-for causation standard or not? So the government's position is that does imply a but-for. So the government's position is that, as I stated, that there has to be a but-for standard plus a more than minor. So there can sometimes be two or three but-for causes of the persecution. But sometimes in weighing those, and I think in Indochimia, that's where it was landowners versus Burundi nationality, the court said, well, it doesn't really matter about your Burundi nationality. It was more the fact that you were a landowner. And I think that's where the essential purpose of, which is essential or principal reason sort of extends the but-for analysis. If there are no further questions. So your adversary says there is, and we're going to hear a little bit, I guess, from him in a few minutes, that there actually is in the record evidence about head of household. We know it includes her testimony. He says it also includes one of the reports. Do you have a reaction to that, since we have a couple of minutes? Sure, yeah. There's one statement by Petitioner in her testimony that says, I believe it's an ex-husband, boyfriend of her sister, said he was going to take her to be his wife or to run the house, in that nature. And then there are some reports that show, I believe, some tax benefits to females who had household. Those certainly exist. But again, the focus of the inquiry is on motive of the persecutors. And there's no evidence that, one, those country conditions extend to the persecutors in this case. We have two individuals and no record evidence that they actually persecuted her or sought to harm her because she was a young female head of household. So while those country conditions may exist, what's essential is the motive of the persecutors. So we have to take a factual inquiry and examine whether or not that was their motivation to harm her. And without the head of household part of this, she loses? That's correct, Your Honor. Okay, thank you. Thank you, Your Honor. Thank you, Your Honors. May it please the Court, as advised, I would like to call the Court's attention to places in the record where there is evidence of the persecutors' motives in this case. And I'd also like to call the Court's attention to its consideration of a similar situation in Espinoza-Cortez involving someone who was attempted, the FARC in Colombia attempted to recruit someone. I think there are some important similarities there. I'd also like to say that, you know, no male protection in the household may have been a bit inarticulate. I think that if you look at this as no adult protection, things flow a little bit better, but I realize it's a bit late in the game for that. Your Honors, in Ms. Lopez Cruz's direct testimony before the Court on CAR page 180, she explicitly states that there would be no one to protect her in Honduras from her persecutors. She makes a similar statement in her sworn declaration at page 218 of the Certified Administrative Record. As my colleague from the Department of Justice just referred to, there is evidence in the record that the Honduran government itself recognizes the vulnerability of female heads of household in the form of some particular benefits carved out of their budget to be provided directly to them. But your colleague from the Department of Justice has also noted that that doesn't speak to the motive of the persecutors. It's the motive of the persecutors that matters, right? Yes, Your Honor. So other than her statement that there's no one to protect me, what is there, if anything, in the record that says these guys are after her? Not just because she's a young female, which you acknowledge that wouldn't help because that wouldn't be a particular social group under the law, but because she's a young female head of household. Yes, Your Honor. And this is why I think that Espinoza-Cortez is worthy of consideration. In that case, the court found that there was a nexus involving a case where there was no direct evidence in the record that someone had been persecuted on account of their social group. They used what they called inescapable overtones derived from the record as a whole. Circumstantial evidence. Yes, Your Honor. Great. So when we're asking for what you're pointing to, any circumstantial evidence, not just direct, I mean, what we said in that case was it would be absurd to expect the persecutors to submit affidavits about their motives. So, of course, we're going to be looking to circumstantial evidence. What's the circumstantial evidence that shows these two bad actors, they weren't just after her sexually because they thought she was an attractive young woman. They were after her because she was the head of the household. The head of the household, Your Honor, was the factor about her that there was no adult protection in the household caused her to be targeted by them. They could have targeted. It made her more vulnerable, perhaps. But this doesn't come to grips with the BIA's question, which is assume that there was somebody else and the mother was there or an older sister was there. What is there of record that indicates their approaches would have been any different? Your Honor, I think that goes back to the skipping a step issue that we have with the board's legal determination here where they have found clear error without articulating why, based on the record and the evidence relied upon by the immigration judge to find a nexus. With respect, Your Honor, to the issue, another important factor I think to consider with wrestling with this idea of but-for causation, in this court's recent case, Del Fiore v. C.S.L. Baring, in other similar contexts involving tort law, involving employment discrimination, there's a huge and important difference between what we're dealing with here, which is a fear of future persecution. The immigration judge, the Board of Immigration Appeals, Your Honors, are prognosticating about something that will happen in the future, which is not what's going on in employment discrimination or in tort law. So I think that the board should not be able to apply or impute a but-for standard for future persecution because there's just a massive difference between something that already happened and something that may happen in the future. Thank you. Thank you, counsel. Thank you. We'll take the case under advisement and thank counsels for their excellent briefing and oral argument. And if counsel are amenable,